*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANNETTE PERKINS,

        Defendant-Appellant.

UNPUBLISHED
July 20, 2026
2:00 PM

No. 373627
Genesee Circuit Court
LC No. 2022-050575-FC

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, malicious destruction of personal property (MDOP), MCL 750.377a, and domestic violence, MCL 750.81(1). She was sentenced to 36 to 120 months' imprisonment for AWIGBH, 93 days' imprisonment for the MDOP conviction, and 93 days' imprisonment for the domestic violence conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arise out of her driving her car into the victim following an argument. Defendant and the victim had previously been in a dating relationship that ended approximately 15 months before the incident. The victim claimed that defendant drove past his house and harassed him every day, even though defendant had a personal protection order against the victim. On the night of the assault, the victim's son drove the victim home from work. On the way home, the victim observed defendant talking to the victim's sister near a parking lot behind the victim's house. The victim shouted out to defendant to leave his sister alone. Defendant yelled back as the victim's son continued to drive past. After the victim arrived home, he stood on the sidewalk talking to his son through the passenger side of the vehicle. Defendant drove toward the victim's home and continued to yell at him. The victim warned that he was calling the police but defendant did not heed to the warnings. Defendant drove over the sidewalk and accelerated straight toward the victim. Defendant struck the victim with her vehicle, pinning him between the two cars, and then sped away. The victim sustained serious injuries and his son's car was damaged.

Defendant was evaluated by the Center for Forensic Psychiatry (CFP) and found incompetent to stand trial. She was remanded to a psychiatric hospital for treatment to restore her competency. After months of treatment, CFP reevaluated defendant and concluded that she was competent to stand trial. Trial counsel requested an independent evaluation, but defendant requested a new attorney and her new attorney did not complete the independent evaluation. The trial court found defendant competent and the case proceeded to trial.

The victim and his son both testified at trial. The victim's medical records were admitted into evidence. Photographs of the scene were also admitted into evidence, including pictures of the victim's shoe on the sidewalk, the damage to the son's car, and lengthy tire tracks in the grass between the roadway and son's car.

Detective Trooper Justin Clarke testified that he administered *Miranda*[1] warnings and interviewed defendant while she was in custody. The parties stipulated to allow a redacted recording of the interview to be admitted and played for the jury. During the interview, Detective Clarke encouraged defendant to write an "apology letter" to the victim as an interrogation tactic, which she did. In the letter, defendant blamed the victim, called him a drug addict, and stated that their relationship was over. The letter was read into the record without objection. Defendant mentioned in her interview that defendant might have had a brick or a stick before defendant hit him with her car, but Detective Clarke did not find any evidence of a brick or stick at the crime scene. Detective Clarke explained that defendant's car was not photographed or processed for other evidence because of a miscommunication.

The jury convicted defendant of AWIGBH, MDOP, and domestic violence. She was sentenced as indicated. This appeal followed.

## II. SENTENCING

### A. OV 4

Defendant first argues that the trial court improperly assigned 10 points for offense variable (OV) 4. We disagree.

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016) (cleaned up); MCL 769.34(10). Defendant has not preserved this issue because she did not object to the assignment of 10 points to OV 4 at sentencing and did not move for resentencing or remand before this Court. We review unpreserved OV points issues for plain error affecting substantial rights. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). The defendant bears the burden of demonstrating that an error occurred, that the error was clear or obvious, and that the error affected his or her substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects a defendant's substantial rights if it "affected the outcome of the lower court proceedings." *Id*.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

When assigning OV points, "a court may consider all record evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "The trial court may also consider victim-impact statements, and may make reasonable inferences from evidence in the record." *People v Montague*, 338 Mich App 29, 55, 979 NW2d 406 (2021).

Defendant argues the trial court erred by assessing 10 points for OV 4. Defendant contends that the trial court should have assessed 0 points because there was no evidence that the victim suffered serious psychological injury. OV 4 is scored when there is "psychological injury to a victim." MCL 777.34(1). OV 4 is assessed 10 points when a "[s]erious psychological injury requiring professional treatment occurred to the victim[.]" MCL 777.34(1)(a). OV 4 is assessed 0 points when "[n]o serious psychological injury requiring professional treatment occurred to the victim[.]" MCL 777.34(1)(c). However, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). But a trial court may not score OV 4 on the basis of the assumption that a victim of the crime at issue would generally suffer psychological injury. *People v White*, 501 Mich 160, 163; 905 NW2d 228 (2017).

The trial court's assessment of 10 points for OV 4 was supported by a preponderance of the evidence. At the preliminary examination, the victim became emotional during the questioning and stated that the situation was bothering him. At trial, the victim agreed that he was suffering "some lasting affects [sic] due to [the] assault." The PSIR reported that the victim stated that he was "mentally and physically exhausted from what he endured as a result of being struck by [defendant's] vehicle," and the victim's son stated that he was "emotionally and mentally devastated" after witnessing defendant's assault on his father. And at sentencing, the victim testified that he wished he had never met defendant, that she harassed and bugged him for two years, that she put the victim in a "bad situation," that he could no longer "do the things that [he] was doing with [his] grandkids," and that defendant "took away a lot from [him]." While neither the victim nor his son sought psychological treatment or directly addressed the psychological effects of the assault, the preponderance of the evidence supports an inference that the victim and his son both suffered psychological injury requiring treatment as a result of defendant's crime. On this record, we are not definitely and firmly convinced that the trial court made a mistake by assessing 10 points for OV 4.

## B. PROPORTIONALITY

Defendant next argues that her within-guidelines sentence for AWIGBH was unreasonable and disproportionate. We disagree.

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Id.*, citing *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "[W]ithin-guidelines sentences are to be reviewed for reasonableness" on appeal. *People v Posey*,

512 Mich 317, 359; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.).[2] "[T]he key to reasonableness review is whether the sentence is proportionate." *Id.* A trial court abuses its discretion if the sentence imposed is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (cleaned up). A proportionate sentence considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, 510 Mich at 183. But "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id.* at 183-184.

"When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, 512 Mich at 360. To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id.* at 359. In order to overcome the presumptive proportionality of a within-guidelines sentence, a defendant must "present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (cleaned up); see also *Milbourn*, 435 Mich at 636 ("Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances."). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (cleaned up).

In this case, it is undisputed that the applicable guidelines range was 19 to 38 months, and the trial court sentenced defendant to a minimum term of 36 months, which is within the guidelines range. Therefore, defendant's sentence is presumptively proportionate. *Posey*, 512 Mich at 360. At sentencing, the trial court noted that defendant had no felony convictions but several other misdemeanor convictions for assaultive crimes. The trial court concluded that defendant continued to pose a danger to the victim because she continued to write the victim letters despite a court order that ordered her to stop. The court stated that it hoped defendant would obtain further mental health treatment and anger management while in prison. And it noted that defendant expressed no remorse for her actions. The PSIR also stated that defendant had nine instances of misconduct in custody, including for encouraging or threatening other inmates to send the victim letters even after being ordered by the trial court to stop. Defendant also addressed the court and expressed no remorse. She argued that she was wrongfully convicted, accused the victim of putting drugs into her food, claimed that she had never harmed the victim, and claimed that the victim was exaggerating his injuries.

Although defendant's sentence was on the high-end of her minimum guidelines range, she has not demonstrated that his within-guidelines sentence was unreasonable or disproportionate under the circumstances in this case. See *Posey*, 512 Mich at 357. Defendant is not entitled to resentencing.

---

[2] While *Posey* was a plurality opinion that is not technically binding, this Court concluded that following the essential holdings upon which the *Posey* majority agreed was prudent "in the interest of judicial economy and jurisprudential stability." *People v Purdle (On Remand)*, 350 Mich App 446, 453-454; 32 NW3d 479 (2024).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues through appellate counsel that she was denied effective assistance of counsel. Defendant also makes several claims in her Standard 4 brief that are best construed as claims of ineffective assistance of counsel.

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review de novo constitutional questions, while we review the trial court's findings of fact, if any, for clear error. *Id*. When, as in this case, defendant has not moved for a new trial or a *Ginther*[3] evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or moved in this Court to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020), our review is limited to errors apparent on the record, *Abcumby-Blair*, 335 Mich App at 227.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

We first address defendant's claim raised through appellate counsel. Defendant argues that trial counsel was ineffective for failing to object to the trial court's assignment of 10 points to OV 4. We disagree. Even presuming that failing to object to the points for OV 4 was deficient performance, the result of the proceedings would not have been different because, as discussed above, the trial court properly assigned 10 points to OV 4. Thus, trial counsel was not ineffective in this instance.

We now turn to the allegations in defendant's Standard 4 brief that can be best construed as claims of ineffective assistance of counsel. First, defendant claims that information in her PSIR was incorrect because she did not have five prior misdemeanors as stated in the PSIR. However, defendant makes no offer of proof as to her claim beyond a bare allegation in her brief. Defendant has the burden of establishing the factual predicate of her ineffective-assistance-of-counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). And we will not "scour the record" on behalf of an appellant in search of support for a claim. *People v Butsinas*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 364778); slip op at 20. Defendant has not met her burden of establishing that trial counsel was ineffective for failing to object to the information in defendant's PSIR.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant also argues that trial counsel should have requested a drug test of the victim. However, even presuming that trial counsel's decision not to request a drug screening for the victim constituted deficient performance, there is no reasonable probability that obtaining a drug test of the victim would have led to a different result at trial because the jury was made aware that the victim was on cocaine the night of the assault by the victim's own admission. Thus, trial counsel was not ineffective in this instance.

Defendant further argues that trial counsel was ineffective for failing to investigate her claim that the victim or some other unknown party put drugs in her food. Defendant claims that, at some point prior to the assault, she tested positive for cocaine because her food was drugged. The record is unclear whether these claims were investigated by trial counsel. There is no evidence in the record or provided by defendant of a positive drug screen or when this alleged drug screen may have occurred. Defendant has the burden of establishing the factual predicate of her ineffective-assistance-of-counsel claim, *Hoag*, 460 Mich at 6, and we will not search for support for a claim, *Butsinas*, ___ Mich App at __; slip op at 20. Counsel is presumed competent, and the defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 US at 689 (cleaned up). Defendant's claim is implausible, vague, unsupported, difficult to prove, and may have hurt the defense's credibility at trial. Defendant has not overcome the presumption that defense counsel's decision was a matter of trial strategy, and defense counsel was not ineffective on this ground.

Defendant makes several additional claims that are flatly contradicted by the record, and defendant makes no offer of proof that the record is incorrect. Defendant contends she was not "allowed" to testify at trial, but the record is clear that defense counsel and the trial court discussed defendant's right to testify at length and defendant ultimately chose not to testify. Defendant also claims that she was never given a discovery packet. However, defense counsel stated on the record that he had "provided all the discovery that I have to [defendant] at the jail," and defendant provides no evidence otherwise. Thus, defendant has failed to demonstrate a factual predicate for these claims. *Hoag*, 460 Mich at 6.

Defendant additionally asserts that she was never given a competency evaluation. But the record is clear that defendant received a competency evaluation from CFP. While defendant never received the independent competency evaluation that was requested by her previous trial counsel, defendant has not shown a reasonable probability that an independent evaluation would have led to a different result at trial. *Abcumby-Blair*, 335 Mich App at 228. Even if the independent evaluation was completed and the independent evaluator had concluded that defendant was incompetent to stand trial, that may not have altered the trial court's ultimate finding as to defendant's competency. Mere speculation is insufficient to support an ineffective-assistance-of-counsel claim. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

## IV. SUFFICIENCY OF EVIDENCE

Defendant claims innocence, the prosecution's witnesses lacked credibility, and there was insufficient evidence to convict her. We interpret these claims as an argument that there was insufficient evidence to convict defendant beyond a reasonable doubt, and we disagree.

We review sufficiency claims de novo. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). We "view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). We are "*required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Defendant was convicted of AWIGBH, domestic violence, and MDOP. "The elements of AWIGBH are (1) an assault, i.e., an attempt to offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v McKewen*, 516 Mich 23, 30; 33 NW3d 307 (2024) (cleaned up). "The intent to do great bodily harm less than murder is 'an intent to do serious injury of an aggravated nature.' " *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014), quoting *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Stevens*, 306 Mich App at 629. "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. "Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent." *Id*. (citations omitted).

The elements of domestic violence are, in relevant part, "(1) the commission of an assault or an assault and battery and (2) a dating relationship between the parties." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). The dating-relationship element of domestic violence may be satisfied if the parties currently or previously had a dating relationship. MCL 750.81(2). Finally, "[a] person who willfully and maliciously destroys or injures the personal property of another person is guilty of" misdemeanor MDOP if, in relevant part, "the amount of the destruction or injury is less than $200.00." MCL 750.377a(1)(a) and (e). "[T]he focus of the statute is on the nature of the damage that defendant's actions caused, *not* the actual monetary cost to the victim for repairing the resulting damage. Indeed, there is no requirement in the statute that repairs must actually take place." *People v Hamblin*, 224 Mich App 87, 97; 568 NW2d 339 (1997).

At trial, the victim and the son both testified that defendant hit the victim with her car. The prosecution submitted photographs of tire tracks in the grass, the son's damaged car, the shoe in

the sidewalk, and the victim's injuries. Defendant's intent to cause great bodily harm can be inferred because striking someone with a moving vehicle is likely to cause serious and aggravated injury. It can also be inferred that defendant did not hit the victim by accident because the tire tracks in the grass and the shoe in the sidewalk both indicate that defendant left the roadway and drove onto the grass before hitting the victim. The victim testified that he and defendant were previously in a dating relationship for three or four months before the assault and defendant's "apology letter" to the victim stated that things were "definitely over" between defendant and the victim, which supports an inference that they had previously been dating. Photographs of the damaged vehicle were also admitted into evidence. The son testified that the damage was at least $2000.00 according to several estimates he received but the damage was not repaired.

While there was some contradictory testimony from the victim and issues of his credibility were raised, reasonable inferences and questions of credibility must be drawn in favor of the verdict. *Oros*, 502 Mich at 239. A witness's testimony is not necessarily deprived of all possible believability merely because it is inconsistent or questionable in some respects. See *People v Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 4, 6-7 (a victim's testimony may be believed in part by the jury despite suffering some credibility issues). The jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and we will not interfere with the jury's role of determining issues of weight and credibility. *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). Applying these standards, there was sufficient evidence to enable the jury to find defendant guilty beyond a reasonable doubt of AWIGBH, domestic violence, and MDOP. We will not disturb that determination.

## V. OTHER CLAIMS OF ERROR

Finally, defendant raises numerous unsubstantiated claims of error and misconduct by the prosecutors, police, and the trial court. These claims of error fail for lack of factual and legal support.

Because defendant's allegations were not raised before the trial court, these issues are unpreserved, *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021), and our review is for plain error, *Carines*, 460 Mich at 763.

Prisoners proceeding *in propria persona* are entitled to lenity in construing their pleadings, but they are not excused from supporting their claims. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976). If an appellant proceeding *in propria persona* provides a brief that lacks clarity or fully supported arguments, we will address any issues that can be discerned, but we will not craft arguments for the appellant. *In re JCR II/JCR/JCR/JCR*, ___ Mich App ___, ___ n 6; ___ NW3d ___ (2024) (Docket No. 367472); slip op at 7 n 6. Merely presenting a "list of alleged errors, without any factual or legal development, is not sufficient to raise arguments for appellate review." *People v Rohm*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369338); slip op at 8.

Defendant raises several arguments for which she has provided no factual or legal support. First, she asserts that the police and prosecution tampered with her apology letter, the transcripts, the recordings of her interview, and the 911 calls. But she does not articulate what was changed or what was inaccurate about any of these documents, other than vague assertions that they were

tampered with and "twisted around." Defendant also claims that the prosecution tampered with witnesses by bribing the victim and the victim's son with a promise of restitution for the son's damaged car. Once again, defendant provides no factual support or binding authority in support of this claim. Defendant further argues that she was convicted on the basis of evidence obtained using a "faulty warrant." But defendant does not explain what specific piece of evidence or search warrant she is referring to. Defendant additionally maintains that she was not given *Miranda* warnings before the police interviewed her. But Detective Clarke testified that he administered *Miranda* warnings to defendant before interviewing her, and defendant has not provided any evidence indicating otherwise. Defendant is not excused from supporting her claims, *Estelle*, 429 US at 106-108, and because of the lack of support for these claims, she has not met her burden of demonstrating plain error.

Defendant next argues that the prosecutor failed to preserve exculpatory evidence by failing to photograph or examine defendant's car. "A criminal defendant can demonstrate that the state violated his or her due process rights under the Fourteenth Amendment if the state, in bad faith, failed to preserve material evidence that might have exonerated the defendant." *Heft*, 299 Mich App at 79. However, "[i]f the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *Id*. Detective Clarke testified that the Jeep was not photographed because of a miscommunication arising out of the Jeep being located at a different scene, and there is no evidence indicating that he acted in bad faith. Defendant has failed to demonstrate how photographs of her car would have exonerated her given that she never disputed that she was at the scene in her car. There was no plain error in this instance.

Defendant also takes issue with the victim's sister not being called to testify despite being on the prosecution's witness list, and with the fact that a probation officer was not present at her sentencing hearing. While these claims are factually true, defendant has made no showing that either of these facts affected her substantial rights or would otherwise lead to a different result in her case. *Carines*, 460 Mich at 763.

Defendant further contends that there was no preliminary examination in this matter and she was subject to double jeopardy for her MDOP conviction because she had previously been convicted of the same offense. But the record is clear that a preliminary examination was held for defendant's charges, and there is no evidence that defendant was convicted of the same offense twice. Defendant has not established plain error.

Affirmed.


/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin